All right. Can we have the attorneys who are going to argue please approach the podium and tell us who you are and who you represent. Good morning, your honors. I am Donald J. Krieger of SHIP Arguments. We represent Innovative Modular Solutions. Good morning, your honors. Assistant Attorney General Carl Ehlitz for the Hazel Crest School District School Finance Authority. Good morning, your honors. Ken Flory on behalf of the Hazel Crest School Board of Education. We received your request for extended argument. You can see the last one went to about 15 minutes. We'd like to keep this one about the same. And not to trump it, it was billions and billions of dollars. And it's only about a million. Just poking fun at you. So get your strongest point first. You can see that we move along. We don't try and cut in too much. I do, of course, because that's me. But have you decided the order that you're going to go in? Is that pursuant to the order we already signed? I believe the order is the first filing of the Innovative Modular Solutions will be the appellant. Act is the appellant, the first one to argue. The second would be for the authority, I believe, on the issue of count one of the complaint. And then the school board would go next. And then we have a response to the appeal of the authority and a reply. And that would end it then? Government only has one argument each and you have two. We could do it all over again. We'd rather not. We've melded the two separate groups of appellants. We appreciate it. We really do. Thank you for filing an order in advance to requesting us. Thank you very much. Well, any time you're ready. Your Honor, again, Your Honor, thank you for listening to us. I'll try to keep this short. Basically, this case involves whether or not cancellation of the leases involved that are the subject matter of this action were, one, valid cancellation, and two, whether or not, even if it wasn't a valid cancellation, whether or not basically the impossibility of performance applies. So I've been trying and seeing how it's possible for me to argue my appeal, which is that impossibility of performance doesn't apply, while trying to stay away from the authority's appeal. There's no need. We're here. Mingle them all up. We don't mind at all. Okay. But we have concluded one thing. The impossibility of performance doesn't become an issue if there was a different ruling on the validity of the action taken by the authority on behalf of the school district to cancel those contracts. Because if the court ruled that in order for the statute, which gives the authority its powers, to be constitutional, that that statute would have to be interpreted to mean they can't unilaterally make and cancel contracts. But let's take that argument, then, counsel. And so agreeing with you that if it was to be applied that way, where the authority now came in and said, we have signed this contract with you, which I'm sure they did out there with other, not with IMS, but with other vendors, and they said, well, you know, we changed our mind. We're short of money, too. It's the state of Illinois. We're going to break our contract with you, a contract that the authority signed. I'd suggest to you that makes perfect sense, because there are cases out there that say the states cannot violate their own contracts. They don't have a right to back it down. But isn't there a difference when the authority is telling the district, or telling you, we're not allowing the district to proceed or we're ordering the district not to proceed with those leases? We're breaking the district's lease with you. Well, is there a difference? Yes. Is there a difference with a meaning? I don't believe so. Because the fact remains that the authority only is acting on behalf. It is not a lawmaking body. It is creating the impossibility on behalf of the district. It's in charge of the district's finances, isn't it? It's in charge of it. It is the district. It is the district for that purpose. It cannot unilaterally cancel a contract, and it cannot make a contract unilaterally. It's like one-handed. Why is that? Why can't they unilaterally cancel? Because in the same line, the statute says they can make and cancel and modify contracts. That was the authority given to them. Now, this court, nobody could say they could make a contract unilaterally. The word unilaterally doesn't appear in the statute. The word making a contract, canceling a contract, and modifying a contract appears in the same line, and the purpose for it is the same as it was for the Chicago School of Finance Authority, who never canceled a contract. The same is to say that with respect to financial matters, they can do that. They can make contracts on behalf of the district. In other words, their board substitutes for the board of the district for those purposes. That's the only purpose for that. It is a usual thing. It is usual to say that the schools can make and cancel contracts, but they can do so only because canceling a contract is a contract. Modifying a contract is a contract. Nobody can sit here and say that we can make a contract unilaterally. Who? With who? Okay, Mr. Krieger, I have a contract for you to provide me with legal services for no fees, and I can do that unilaterally. Absolutely not. Okay, you enter into a contract with me, and you say, you know what? I can modify that contract, which is not canceling it, and say we already have a contract with you, and your fees are listed at $300 an hour. And you know what I'm going to do? I'm going to say you still do the same work, and I'm modifying that contract to $100 an hour. Mr. Krieger, one thing that I'm unclear about. At the point you receive the letter canceling the contracts, had the district paid you all the money that you were owed up to that point in time? I'm not sure. They may have. But the issue of what the damages are wasn't decided in the trial. I understand that. I don't know for sure. But let's assume they did. I don't know.  Absolutely not. But when you talk about that, you're talking about the cancellation. They didn't pay for removal costs. They didn't pay for anything. They paid rent and then said, I'm not paying anymore. But they didn't stop paying rent while they were still using the modules. They paid rent for all the time they used the modules. I don't know that for sure. I believe you're right. Okay. But that isn't the issue. The issue is here. You know what's interesting? I wish I could sit in your chair and ask one question, and that is this. That is this. The authority is not seeking to defend what the district did. The authority is saying, you know, I want you to dismiss Count 1. We don't have a cause of action under declaratory judgment. Why? Because there's no adversity. Because it was decided on Count 3 that we didn't have the authority. So if this court were to agree with the first argument of the authority, you would say, you don't belong here, authority. Count 1 should have been dismissed because there was no adversity. Then what happens? There was a finding with respect to the school district. You know what? You don't owe the money because you had to listen to the authority. And then she compares that, the judge compares that to what? The case involving prohibition? You remember those days when, at least I do, unfortunately, I'm not prohibition, but talking about it a lot. And that was that a lot of nieces then were expecting, you know what?  Prohibition is close. So the lease of a property said not only do I want to have the lease of the property, but I must sell alcohol. That's what they did then because they knew it was coming. So when it did come, the Constitution was amended, statutes were amended, and they could no longer sell alcohol, and the lease had a specific requirement that they had to sell alcohol because the lessor, of course, got money out of it. And so that was impossibility of performance. You would be allowing a violation of a law to create impossibility of performance here. They could be charged, right? I mean, would you concede that if the district wrote checks, which they're not allowed to do, I don't believe, under the Authorities Act, they don't have control of their finances, I don't think, in any way. And if they took an action in direct violation of what the authority ordered them to do, which in this case is to cancel the lease, the wording in the Act provides that they can be fired, the state can take administrative action. And is that right, that they can take administrative action? But there is no provision for the authority to pay damages or any other damages on district contracts because they would cancel it. That would put me number one in a court that... A court of claims. A court of claims. Nobody wants to go there. Nobody wants to go there, and nobody would recover there, and the only one who could have a chance of recovering it is the school district, who is the one that's liable. School district pays them. When Chicago School Finance Authority issued bonds, which, by the way, I'm a bond owner and I was involved with those, they paid those bonds. Did the authority pay it? No. The school district paid it, even though the authority, because it was their money. It's the school district's money that's involved here, not the authority's. It's the school district's contract. Setting up the authority, though, provides that the authority cannot just get rid of the debts. The authority cannot deny creditors the monies they are owed. Are you a creditor? Absolutely. When? When did you become a creditor? There's an obligation under a lease. An obligation under a lease is no different than an obligation under a bond. It is a debt of that authority, which they not only voluntarily entered into, but validly entered into before the authority was formed. I didn't see you define yourself as creditors at all. Again, maybe there's no reason why. We don't have to define ourselves as creditors. We said it was obligations of the authority to pay, just like any other debt, and we said so when we talked about the bond contract. It's not a debt to us going forward. Is that right? Is it all debt? Is it a debt of mine if I lease an apartment and I sign a three-year lease? Is it a debt for the three years going forward? Do I owe that money? Yes. As a creditor? Yes. Okay. The answer to that, in terms of bankruptcy, and this wasn't the bankruptcy statute. It doesn't even, where he said smile test, I call it the straight face test. What I'm saying is it's not a bankruptcy statute. There is authority to make and cancel contracts on their part. There is no direct authority to cancel contracts unilaterally. So the action they took didn't cancel the contract. What does that mean? That means the district is still liable under it. Well, there are two cases where receivers, and I suggest this is not a bankruptcy, this is not analogous to bankruptcy since creditors are protected under the Authority Act. I suggest it's the nature of a receivership. In Nelson v. National Bank, which is a 1937 case, the headnote, a receiver is not necessarily liable on covenants of lease made prior to his appointment by a party for whom he is a receiver. He has a right to elect whether he will adopt the lease and proceed thereunder. This specific act, now that's without a specific act by our legislature saying that he could break the lease. In this case, the district, the authority can direct the district to break the lease. The authority has the authority to break the lease. Well, if you read on in that case, it went on to say even if he chose not to honor it, which, by the way, they did since they were in the, they were, the authority was in effect for 14 months before it was canceled. So that case doesn't apply for that reason. That case, if you read on, doesn't say that you're not entitled to damages even if they do cancel. And, in fact, we are. Fork decided that wrong. We're entitled to damages either way. But that case is a negative. It's important to say they're wrong. I've tried that. And it has not worked well for me. What? I didn't say they're wrong. I'm just saying. No, I said if you, the 1937 case, it doesn't say that, it also goes on to say in our case, there's other cases that say what? That we're entitled to, if they want to try to cancel as a receiver, which they're not, if they want to do it, they have accepted it by being in place for 14 months and paying rent for 14 months. Would that be a factual issue? An issue of fact? I think they agree that they're there for 14 months before they cancel it. I don't know if it's a factual issue in that sense. Well, and in Touchant, which is a 1979 case, an Illinois appellate court case, says the same thing about receivers not being liable for leases. Well, the receiver is the authority. That's correct. The receiver is the authority. But I'm saying they're not the receiver. I am saying they're, you asked me, in effect, if the authority wrongfully cancels, are they liable to go to the court of claims. Right? And then the next case says the authority, if they are a receiver, isn't responsible for a cancel when they don't honor a contract, which means the agent. It doesn't mean that the entity that entered into the contract isn't liable. Well, that could be, except they're in receivership because they have no money. So in this case, Riverdale, as I understand it, had no money, and their finances were taken over completely by the school finance authority. Am I mistaken? Well, I disagree that there's been any evidence that they had no money. They didn't default on any other obligation, to my knowledge. They didn't cancel any other contract, to my knowledge. They pick and choose. You can't do that. Why can't the authority pick and choose? The same reason that in order to have bankruptcy apply, in order to do that, you have to treat the creditors equally. You have to treat them the way it is. That's not how it works in the insurance code or the bank code. Illinois, the receiver, the director of insurance, picks and chooses, does he not? First of all, I'm not an expert in whether they pick or choose, and it's kind of a question. I believe, however, they can't pick and choose among a class that say I'm paying you and I'm not paying you. No, they can't. Well, actually, the director of insurance is given title to everything from the insurance company. Right. He's given title, and then he distributes the funds, if there are any left, equitably. This was a situation where, I'll tell you what, I don't want to do this anymore. I'll pay my other creditors. You don't have an argument under equity, do you? You're arguing you're based on contract, right? You're not suggesting that equity would insist that you be paid, your client, IMS, be paid from a bankrupt or a very poor. No, because this isn't about equity. I'm saying we're entitled to everything. We're entitled to a judgment. If they can't pay the judgment because they don't have the money, that contract is what it is. If somebody sues me and I don't have the money, and they're going to be squeezing blood out of a term, that might be the case. But that doesn't mean this court says to me, we're not entitled to judgment. That's not what it means. I'm entitled to judgment, and if there's some reason they can't pay, and by the way, in this state. Well, they're ordered not to pay by the authority. If they do, they're violating that statute, and they could be charged. I suggest to you that Mr. Elitz's office, the attorney general's, could indict people if they wrote you a check. If the school board wrote you a check, they could indict them. So the argument that this statute, which clearly didn't require them to cancel a contract, would you agree there? Well, it would require the district to cancel it if the authority told them to. Yes, it does. It clearly says that. Well, it doesn't clearly say it, because it says I argue with you, and I say to you, they cannot unilaterally make a contract, nor can they cancel it, nor can they modify it. In order to cancel a contract, they're subject to case law in this state, and they're subject to everything else. And you cannot cancel a contract except according to its terms or by further agreement of the parties. Well, again, going back to the insurance code, which is highly regulated, as are our schools, these people exist. The district exists as a result of the school code. They operate under the school code. In addition to that, you now have the School Authority Act that came in, which covers specifically this district. And they're ordered under that. If they're under the Act, a plain reading of the Act would say they have to follow the authority. But they have no authority over their finances any longer as long as only the authority does. So is it your – I hate to ask the question back, but I have to. Go ahead. Is it your contention, then, that the trial court was wrong when it determined that they didn't have the authority to cancel the contract? That is my contention. Oh, so your contention is that this statute – You're allowed to ask a question. I give you your answer. Okay. Fine. All right. I'm moving on. My contention is that the statute doesn't say that. It was never intended to mean that. And if the statute, in your mind, is constitutional – is determined to be constitutional and allow unilateral cancellation of contracts, that means, as far as I'm concerned, that the impossibility arguments are moved. Well, you would lose them, that's for sure. Well, I wouldn't lose them. The impossibility says that the statute prevented you from doing this and that the statute is valid. And if the statute is valid, there is no more contract. You wouldn't decide that you don't owe it on the contract. You wouldn't decide on impossibility. You would decide there is no contract, therefore you don't owe anything on it, which may or may not be true. There would be no contract from the time you receive notice from the authority that that lease is canceled. And for a reasonable time there to dismantle it and remove the module. Right. And that's where you would come. And if that's your determination, then what happens? Impossibility is something that shouldn't be argued. Well, you can argue. No, we want you to argue, counsel. I'm just a voice in the wilderness, counsel. I'm telling you where I'm going, where my concern. You ask me a question and I give you an answer. Okay. You're unhappy with it. Oh, well. Move on. Well, you know, my argument with respect to this case is, number one, impossibility. Every case, they didn't adopt a statute. The statute didn't cancel the contract. The statute didn't force anybody to cancel the contract. And in fact, the statute probably doesn't authorize the cancellation of contracts that were existing at the time the authority was there. The statute says what? It says that the purpose of the statute is to provide for the continuing operation of the school district and for the payment of its credit. The idea was to provide the means of payment. And they didn't do it. They decided the means of paying it is not paying it at all. I'm going to cancel it. Not only am I going to cancel it, but I'm going to cancel it because the district requested me to cancel it. And that's in their minutes. And that was a certificate. And that happened. So, therefore, impossibility doesn't apply. It can't apply because there is no law that prevents them from continuing. And the 2008 Supreme Court. But the district? There is no law. If we were to hold, and again, I'm just one judge of three, if this court were to hold that the authority had the authority to discharge, to terminate the lease, how then would that not be impossibility for the district to come and not do what they did, which is we have to terminate the lease pursuant to the authority. You can't sue us because the authorities are in the show, not us. How is that not impossibility? Because impossibility has to do with a contract that isn't canceled, but because of circumstances can't be done. That's what it is. Once you say a contract is canceled, impossibility doesn't apply. It isn't there. Okay. I see your point. You're enforcing a contract. If it's canceled, you're doing it. I see your point. Okay. Right. So my point is, in no event does this apply, because if the action taken by the authority were invalid as the trial court determined, it wasn't the law that caused the problem. And the school district isn't bound. And, by the way, there's one other thing. It talks about a valid action, that the school district must follow valid orders. It's the only statute that I've seen that term used. And in order to determine whether an order is valid, if they could do so, they could make a determination that it isn't. They could go to court and find out. They could ask for a loan from the authority to pay their debts. They could have done a lot of things, which they didn't do. They could have asked the taxpayers of Illinois to pony up and pay off the amount of money for the modules they weren't going to use. They could have done that. Are they required to do that? Yes. The argument there. My argument is there are. And my argument is, I'm a taxpayer in Illinois, and I understand that. But the other thing is, what they've done to that district, in terms of being able to cancel contracts, how has that district continued? Are you going to say this is any different from canceling a contract that bonds were already issued? Mr. Krieger, was the authority's direction to the district to cancel the contract a valid order? No. Why not? Because they can't unilaterally do so. And they didn't order them to cancel the contract. I don't think. I think they said that on behalf of the district, we're canceling the contract. But it wasn't a valid order because the contracts are binding, and there's no basis for not saying they're not binding. And the fact that they don't know how to pay it doesn't matter. And, you know, this state has said, you know what, units of government can't file for bankruptcy. And this court can't give them bankruptcy authority. In order to file bankruptcy, municipalities and governmental entities in the state would need a change in statute. It's not bankruptcy. I understand. It's not a bankruptcy. And any statute which authorizes a unilateral cancellation of an obligation to pay, whatever it is, the courts have said you can't do it, and in even worse circumstances. Even worse circumstances. And an impossibility certainly isn't the case here. It isn't impossible for them to pay or at least to be subject to payment. Whether they can afford it is not, I beg to differ with this court, is not up to you. It's not up to you to determine whether we should be able to force them to pay. Anything else? You'll have time for reply. I have a lot of other things, but I can't get to them because, but I will. You'll have time for reply. Mr. Elitz. I know I'm in trouble when I bring the statute book with me. It's not a good sign. May it please the court, Assistant Attorney General Carl Elitz, appearing for the Hazelcrest School District, School Finance Authority. Your Honors, this case is kind of a procedural mess. And if I could just sort of back step a little bit and sort of explain what I think the case should, how it should be decided, maybe it will make it simpler. I think I should be here but only as an intervener and not as a party. Once that's figured out, whether you agree or not, then I'd like to argue about what the statute allows and doesn't allow. It's my contention that it allows the authority to cancel the innovators' contract. If the court agrees with me on that point, then I agree with what my opponent I think just said, which is you don't need to get to the impossibility argument, although my co-counsel, Mr. Flory, will certainly talk about that. So the guts here is what the statute allows the authority to do and whether that's constitutional. I'll get there. But with your indulgence, I'd like to just explain why I think that the judgment against the authority should be set aside on grounds that are procedural. The Declaratory Judgment Act doesn't provide for this sort of order. There's only one branch of government in our system that has the ability to declare what the law is absent a concrete dispute between citizens. When there's not a concrete dispute between citizens, the courts really don't have any authority to act. That's what the Declaratory Judgment Act does. It creates an exception to that rule, and I don't think this case falls in that exception.  The courts can intervene and tell them what their obligations are so that there isn't the uncertainty and problems that are caused by parties not knowing what their duties are. In this case, the trial court decided before reaching the question about the authority's obligations that it was impossible for my co-counsel to perform, didn't need to get to the question about the authority under the statute. And so when she entered, when the trial court judge entered judgment in February of last year, there really wasn't a dispute between the authority and innovative. It had been decided. And for that reason, the court should not have entered judgment. Now, she had made a finding, and that finding went against my client, and that finding is part of count three. So Mr. Kroeger gets very upset about the fact that if we don't have a decision on count one, he can't get to his count three argument. I don't think that's right. He can still argue about the rightness or wrongness of the judge's finding, but not about the judgment. It's a technical point. I'm sorry to have to make technical points because I think the question could be put, well, why do we care? But judgment shouldn't be entered against parties who are not in a real dispute. And so I'd urge the court to set aside the judgment. That brings me to my question, which I think the court still has to answer, which is whether Section 1F25.2 of the Authority Act grants the authority the power to cancel innovative's contract. My argument is that it does. It says plainly that the authority has the power to make, cancel, modify, and execute contracts and leases. This is a lease. The last sentence of that provision is very telling. It says, the authority may, at regular or special meetings, find that the district has insufficient or inadequate funds with respect to any contract other than a collective bargaining agreement. That's part of the same provision that I'm arguing about. The General Assembly's intent there, I think, is pretty clear. It's to create this authority which comes in and looks and sees what can afford to be paid and what can't afford to be paid. And to make those tough decisions without touching collective bargaining agreements, the General Assembly was clear about that. I don't think that leaves a lot for the authority to cancel, but innovative's contract was one that the authority decided should be canceled if the district was to continue financially. There was a crisis here. The legislative debates make it very clear that the General Assembly was very much afraid that the Hazelcrest School District was just going to collapse. And this statute was passed with that idea in mind. I suggest to you, though, Mr. Ehlers, that the Act, as you just read it, does leave a great deal to be canceled. It could cancel every employment contract except collective bargaining contracts. It could fire everybody. It will affect every contract other than you would expect it to be the teachers. So it affects everything. So it's extremely broad. Protecting only people under collective bargaining and creditors. Obligors. Do you agree with the idea of creditors? I think the word creditor may be misused, Your Honor. Section 7 talks about the district's obligations and sets those aside. I don't think we're dealing with an obligation to the district. Those would be bonds. But we're dealing with a debt or an obligation. Obligation's a tough word, but they're a creditor of the district. And under the statute, it's my contention that the authority has the power to come in, look and see who is owed money, and decide some parties cannot be paid if the district is going to continue to go forward. My opponent argues, and this pushes me into my next point, my opponent argues that that violates the constitutional provisions of the Contracts Clause. And so that can't be what the statute means. But that's not what the Contracts Clause has been interpreted to mean under longstanding precedent going back to the U.S. Supreme Court. There are limits on what the authority can do. It can't violate the Takings Clause. There's been no claim in this case, though, that the authority has done that. But with regard to promises of future payment, which would be a Contracts Clause analysis, the state can step in and say, we're going to nullify that obligation. When the state does that, the courts have to apply a balancing test, which balances the interests of the parties with the police powers that the state is trying to exercise and the purposes behind the police powers. Makes that tough decision about whether this is or is not one of those situations where the state can set aside private parties' rights. And I would suggest to you, Your Honors, that in this case, that was an appropriate exercise by the authority to cancel the future payments that were due under these contracts. So when you talk about future payments, you're talking about the payments that became due in Owing after you sent the notice of cancellation of the leases? Yes, and it's my understanding that those letters were sent out at the time when the buildings were vacant. So when there were students in them, the district continued to pay. But at some point, the decision was made under the statute to cancel the contracts and to tender back to innovate of the buildings. So the district had paid up to the point that the letters were sent? That's my understanding, yes, Your Honor. There were also different times, though, right? One like Bunch School, I think. Bunch was the last. Yeah, Bunch was the last school to be vacated. There were two schools that were vacated initially, then a third school, and then the Bunch School was the last school. And I didn't articulate this when I began my argument, but I would argue that when the Bunch School was removed, that's when the relationship between innovative and the district ended because there was nothing to be done at that point. That's when the case became moot with regard to the authority, not with regard to the district. And that's when the entry of judgment became improper after that point in time. The decision was made primarily by your office not to invoke sovereign immunity nor the Court of Claims defense, or not defense but to assert the lack of jurisdiction. Why is that? That's because the plaintiffs did not seek damages. They very carefully avoided in their complaint asking for any money penalty. And the Court of Claims Act would provide a defense but not for a request for the court to make a declaration or to perhaps issue an injunction telling the parties what the law is. At that point, I think they have us in court fairly and we have to appear and argue. Well, I suggest you may want to look at a very recent case, SBV v. CMS, November 18, 2010, number 108673, where across the street a store was leased out and they wanted a court to come in under the Declaratory Judgment Act to read the lease and tell the store owners that they had a right to 45 years' worth of extensions on the lease. And the various courts did what they did, the trial court and the appellate court, and then the Supreme Court said under sovereign immunity that's not allowed. We don't have any jurisdiction. The trial court didn't have it. We don't have it. And you may want to look at that. I'd like to raise that case as an argument. I'm not sure whether sovereign immunity can be waived. I think it might be waivable if we haven't raised it. If we can raise it, I certainly will. If we can't, we can't. But I think the arguments are still the same. I mean, even if we don't raise it. You don't have the district anyway, frankly. So since you're not looking for money from you, we'll get you out of the case, but I don't know that raising sovereign immunity will assist the district anyway. Right. And I think Mr. Krager will acknowledge that the complaint was drafted in such a way as to not trigger the bells and whistles that would cause the AG's office to say this has to be decided in the Court of Claims because there's going to be a money judgment entered if you prevail. That was, I think, his intention of framing this as a deck action. And perhaps he shouldn't have filed it as a deck action, but it certainly was improper to enter judgment after the buildings were all hauled away. But now the judgment that was entered in count one was just the interpretation of Judge Flynn of how he read the act. Is that correct? The judgment is how you read the act to mean that the – It was Judge McDonald, I believe. I'm sorry, who was it? Oh, pardon me. Yes, she had – in fact, we thought we had prevailed on February 22nd. We got an order saying that those counts against the authority were dismissed, and then there was an emergency motion, and I actually got to appear in the circuit court, which was a great thrill for me because I never get to do that. But yeah, and then Judge McDonald, they convinced Judge McDonald that she had made a mistake in entering judgment and not entering judgment on count one, and she did that. And I think she flipped the wrong way. I think her initial impulse was correct. We'd still be there, and I'd probably still be here, but I think I should be here as an intervener. So if there are no questions, I'll stand on my briefs and reserve whatever time I have. Thank you. Good morning. Again, Ken Flory on behalf of the Hazel Crest School Board. May it please the Court. If you'll allow me to just emphasize some of the facts that really provide the context of this case, the human element, what really was going on with these buildings and how that interties into the legal defense that the Court ruled in favor of the school board. The Hazel Crest School Board, before the takeover, had the goals of educating the students in the same level as other suburbs. In order to accomplish this, they needed more classrooms, they wanted smaller class sizes, and that led to the renting of the mobile classrooms. And when we're talking about mobile classrooms, as you've inferred, literally these can be moved. They're set up, they're occupied by students. When the students are taken out, they can be moved to another location. And in fact, they were. After the Hazel Crest School District Authority canceled the lease, they were moved. They were moved to other schools, they were re-leased, and they were actually sold in some cases. To correct the point, the rent was paid for each time period that the school had possessed the units. They're only fighting about the future payments when the units were already in some other school's hands making lease payments. Or in their lot, right? Do you know for sure those individual modules were not in their lot? They can be disconnected. I understand they can be, but do you know which the four modules, or how many modules there were at the four schools, was it part of the record that all four of those were indeed not just returned to IMS, but IMS was able to release those specific? Yes. Okay. Those specific units were through discovery, damages discovery, those specific units were put into other schools, sold or released, either combination. But after some time expired as well, correct? There was some time period, correct. But in a sense, the plans were double dipping. They were seeking payments from Hazel Crest School Board at the time when these were being paid. Those same units were being paid and they were receiving compensation from other schools. Well, had the district sent the letter without the authority existing, they could do that, right? That would be a night and day case, but we're not talking about the school district sending the letter. And there's this kind of a misconception going on by counsel for the plaintiffs that the school did anything with the leases. Once the school district rented the mobile classrooms, and this was for four different schools, there were multiple mobile classrooms for the bunch, for Palm, Lincoln, and Frost schools. And then after those leases were entered into, after rent payments were made, the financial collapse arose. And this was in December of 2002 when the school district's goal of educating its students at the same level by providing smaller classes just failed because of the finances, because of public school funding in Illinois. We're not talking about budget problems. We're talking about the verge of failing to make payroll. The literally shutdown of the schools, the unthinkable where the Illinois Public School District closes in the middle of the school year. Students are out on the street. Public schools are not supposed to shut down. They were supposed to be able to fund them through property taxes, through state money, but that unfortunately was insufficient for the Hazelcrest School District. The property taxes were woefully insufficient. The state payments were woefully insufficient for the goals that the school district had set up for educating its students. So what happens next? In the face of this crisis, the state took the extraordinary steps. And we're talking about an extraordinary crisis. This is not the every day, once a month, once a year. We're talking about once every 50-year event where the state has to come in, take over an independent school board, completely take over the finances. The elected body, the School Board of Education, which one day had control over the finances, control over educating the students, literally the next day had no control. So again, this floating misconception that the school board could do anything after the takeover is wrong. The authority canceled the leases. The authority controlled the credit cards. The authority controlled the checking accounts. Everything. The school could do nothing. It was, in a sense, an employer-employee relationship, master-servant, parent-child relationship. The authority did it all and had the authority to do it all. And they still are to this day. The authority still is in place in the school district. Have they done this to other districts or has it stripped the district? There's been a K-Row school district in southern Illinois and Round Lake Beach in Lake County. It's been a similar situation. But, again, it's critical to understanding the defenses and the arguments raised by plaintiffs that the school district was powerless. In a sense, the school board, now after the takeover, is caught in a crossfire between the state of Illinois and the plaintiff. The state comes in. The state cancels the contract. The school can't take any action. They are not legally in the position to say that's an invalid order. We're going to disregard it. We're going to somehow cut a check that we don't control, that we're going to risk personal civil liability and criminal liability, as you said, potential indictments, and go ahead and continue with these classrooms. Just legally impossible. Why didn't you go and file a DEC action? They're suggesting now the brilliant thing to do would be to go file a DEC action yourselves, you people saying, well. The school board, again, that implies that they have the power. You can't hire an attorney. You can't file a lawsuit without the payments being authorized by the school finance authority. They couldn't provide notice without school finance authority approval. And your theory is that the authority wouldn't pay for a lawyer to sue themselves? They're not going to pay for a lawyer to sue themselves. The attorney general who's the lawyer for the authority is not going to say the authority is wrong. I mean, the obscenity of suing. The attorney general is actually famously fair, and they say to the government a lot, frankly. No, you can't do that. Nobody listens to them generally. I think in this case where they're the lawyer of the SFA, of the authority, that would probably be a problem to say that they're, as a client, literally, the authority is the client, to take a position contrary to the client's position, which is the leases need to be canceled to keep the school district open. And what else happened? What were the other consequences of the takeover? And it's critical because the question was asked, was this the only contract that was canceled? No. A third of the staff was let go. The school district was consolidated. The financial rescue said we're taking all the little community schools and consolidating them. We're shutting down school buildings. We're firing a third of the staff. We're firing teachers, administrators, janitors, classroom aides. And to do this, the leases needed to be canceled. That was part of the consolidation effort. The authority CFO said this is what needs to be done. They carefully analyzed the facts of each contract and made the hard financial decisions. Again, we talked about it. After this cancellation, the notices were sent. And this was over a two-and-a-half-year period. This was not a rash decision. This was not coming in and just willy-nilly saying we don't like the vendor and we're going to cancel the leases. This was a careful plan, consolidation, reduction of the facilities. Over a two-and-a-half-year period, these four facilities, the mobile units were returned. They started with the Palm, then the Lincoln, then the Frost, ended up with the Bunch. And as we talked about, they were resold and released. That's critical. That's the big distinction of all the cases, that this is not a bond case where the bondholders pay money to the public entity, they spend it and can't get it back. No. This is renting a mobile classroom. The balancing that Council talked about earlier occurred. Did they lose some profit, a piece of profit for the future? Possibly, depending on how much they got from the new schools. But they were able to recover their units. They were able to put them to marketable use and to mitigate the impact on itself and the impact on the entire community. We have a business that received money before when these things were good from the public school. Things went bad. They got their classrooms back and they still want money. Blood out of a turnip is probably the apt phrase that we're thinking about. Now, these facts. I'm not detailing the facts to appeal to your emotions, to rile up the situation. It's because the facts are tied into the plainest argument that we should have rebelled, we should have disregarded, we should have made a determination whether or not this canceling of the leases was valid and do something about it so that the leases were maintained. Again, under the structure of this Authority Act, that it was literally impossible, legally as a matter of law and undisputed impossible, for the school district to take any action that the authority did not approve. Let's talk about, because this is a complicated case, because of the counts against the authority, how does this logically line up? Logically, if the court rules in favor of the authority saying you could cancel the leases, that was statutorily allowed and constitutionally allowed, we're done with the case. The impossibility defense doesn't come in because the contracts are over, the school district is facing no liability, no damages. But even if the court would agree with the trial court and said that, you know what, for some reason you couldn't cancel the leases or it wasn't constitutional, whatever reason, that doesn't lead to automatic liability to the school district. Because that's when the impossibility defense kicks in, and this is a textbook example, the rare extreme example of the impossibility defense. Again, if the authority's right wrongful conduct or right conduct, which we believe was right, we believe was statutorily allowed, we believe was constitutionally allowed, but again, let's say it somehow wasn't, the trial court may have been right, the school district does not face liability because it was legally impossible to do anything with the leases, to continue to perform. That's what we're talking about. Does the impossibility defense allow for the school district to stop performance under the lease contracts? And again, performance, the performance we're talking about is making rent payments for the future. They return the units, that is a part of performance, they lost the use of these buildings, they lost the use of more classrooms for the students, and literally the balancing occurred, they performed the best that they could. I don't want to beat a dead horse. Again, the authority, I have to repeat it, the authority was in control of the leases, over the finances, the school district was but a player in this process. To address a point that Your Honor raised earlier about the court of claims procedurally, the authority did move, the first step they took was to move to dismiss counts one and two and say it should be, this is a case that belongs in the court of claims. Judge Flynn denied that. That's not appealable until the end of the case, until a trial, so that's why it kind of got caught in a no man's land of what do you do with this denial of the motion. So I just wanted to make you aware of that. Again, I'll wrap it up by saying everyone suffered in this process. The students of Hazelcrest suffered. The board members suffered. The community suffered. The contractor suffered. The state public school system suffered when any single member fails. And that's just the harsh reality of what occurred in this financial setting and our school funding. And the state came in, did the best they could to a very difficult situation, and it was all according to the law. And we ask you that you affirm, reverse the judge's ruling in favor of the authority, but as to the school board, affirm the ruling that they were not legally responsible for the lease termination. Thank you. Thank you, Mr. Flory. Mr. Cahir, before you begin, let me apologize. I said something about the Attorney General's Office being famously fair. I was being sarcastic. I should stop that. Mr. Cahir. It's fair what happens to the Attorney General. Certain members are famously fair. I've got a couple of things. Many of the facts you said, of course, aren't of the record, and it's nice that you're being able to say that. And I have facts that aren't of the record, too. One, they haven't paid everything required by the lease under the cancellation provisions. It's that simple. They haven't paid for the removal. They haven't paid for a number of things. And I want to read something to you that came from our brief on page 18. It's on our reply brief. When I said, the authority next argues that the common law recognized the right of a receiver to cancel unexpired leases. Now, we say the authority isn't the receiver. In any event, the case law cited by the authority makes it clear that even if a receiver, pursuant to court order, terminates a lease, the lessor remains liable for any damages provided for in the lease. This is a Supreme Court decision, which I think we all have to honor at this time. And it's three years later than the 1937 case, I might add. The established rule is that a receiver, by virtue of his appointment, does not necessarily become liable upon the covenants of a lease made prior to his appointment. So that's why we didn't sue the authority, even if they were a receiver, for the dollars. So prior to his appointment by the party from whom he's a receiver. But subject to the order of the court, he has a right to timely elect, which they didn't do here, whether he will adopt the lease and proceed thereunder, or reject it if he finds it of no value to the estate. So now we can, I don't know if 14 months goes by, I think that's, David, now I've got the last paragraph here. There are two classes of cases where the question of liability after disaffirmance by a receiver has arisen. In one class, the lease has contained a provision for damages in case of a breach of covenant to pay rent. That we have. In those cases, it is held that the lessor may recover. Clear as a bell. That didn't involve a statute, right? And the statute here, if you interpreted it your way, is unconstitutional. If not, they didn't have the authority to cancel it. Do you care about count one? The AG is arguing that the judgment found was wrong. Does it have any effect on your case? Here's what's funny about it. If you decide his first argument that he doesn't have, that there was no adversity between the authority and that, I don't know what you're saying about that. I think he would still intend to argue the second argument, except he would have come in as an intervener. I don't think he's giving up the second argument. If he is, I'd love it. Because if he's giving up the second argument, and he's only going to the first argument, and he says there's no adversity, he agrees with me. And now we do arrive at if there's no adversity, he's not fighting constitutionality. And you know what? Neither did the school district allege in their briefs, and I looked, that the findings that gave rise to the impossibility were wrong. They didn't say so. They didn't argue it. So, therefore, there's no argument left to say it, except your argument. I don't have an argument, counsel. I'm a judge. So what I'm saying is if you accept their first thing, that they don't belong here, I'm happy with that. Because they're saying there's no adversity between them and us. And I think another reason that might be is because it's kind of clear that you can't grant without, the legislature can't grant to an entity that isn't the legislature, can't delegate to them without any kind of standards as to whether or not you can cancel a contract unilaterally. Now, of course, they can enter into agreements on existing contracts, could have settled with us, could have done a lot of things, because that's within their authority to do. But the unilaterally, which always reminds me of the joke, is when I was playing music, why is everybody silent? They're all clapping with one hand. That's what it reminds me of here. You can't make a contract unilaterally. You certainly can't modify it unilaterally. And you certainly can't cancel it unilaterally. And that's not what the statute said. And if you interpret it that way, it's clearly unconstitutional, because there are no standards upon which to determine what creditor gets what, what creditor doesn't. And they say, we're not going to pay you, but we're going to pay them. And when you asked me before about are you expecting the taxpayers to pay, I didn't ask that. Is it right for the taxpayers to pay what they owe my student? No, I said you don't have an equitable argument. It's a contract case. And there are no equitable arguments. So what the district board argues, we're very poor. Yeah, they are. That has no effect on a contract. It has an effect trying to collect from them. It sure does. But that isn't before this court. And I'm suggesting to you that the school district is doing fine. I'm also suggesting to you that they made it, now they are, I'm just saying that they made a decision as to what creditors to pay, what not to pay, and if this was bankruptcy or receivership, which, by the way, is always, receivership is one that's monitored by the courts, which it isn't here. So this isn't a receivership. But even if it were, we're still entitled to judgment for damages. That's what the Supreme Court has said. So that the only issue here is whether impossibility, that should be the issue. And you know what? It isn't impossible because, you see, they couldn't have been held under the act. They couldn't have been indicted under the act. The school district is taking the action. The school district could have made a determination that it's invalid. Could have. And they didn't. But even so, a law which doesn't allow something to be done, the risk is taken by the school district, not by us. Thank you very much. In this case, it will be taken under advisement.